*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARK N. ARTIS, | : | |
| | : | Civil Action No. 11-3613 (WJM) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| OFFICER MCCANN, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

**MARK N. ARTIS**, Plaintiff pro se
000300/000214226C
Special Treatment Unit
8 Production Way
P.O. Box 905
Avenel, N.J. 07001

**JUSTIN L. CONFORTI**, Counsel for Defendants
State of New Jersey
Office of the Attorney General
Department of Law
25 Market Street
Trenton, N.J. 08625

**MARTINI**, District Judge

Plaintiff Mark Artis, a civilly committed patient at the Special Treatment Unit ("STU") in Avenel, New Jersey, brings this 42 U.S.C. § 1983 action against Defendants Senior Corrections Officers Darlene McCann, Teofilo Moreno, Craig Hammel, Shannon Kelly and Lieutenant Erik Qualls ("Defendants") for violation of his constitutional rights. This matter comes before the Court on Defendants' motion for summary judgment under Federal Rule of Civil Procedure 56.

There was no oral argument. FED.R.CIV.P. 78(b). For the reasons set forth below, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

**I. BACKGROUND**

Plaintiff is a New Jersey resident who was confined at the STU in Avenel, New Jersey, at all times relevant to the complaint. (Defs.' Br., Decl. of Deborah Maloney ("Maloney Decl."), Ex. D, Treatment Progress Review Committee Annual Review Report of Mark Artis.) On July 7, 2010, Defendants McCann, Hammel, Kelly, Moreno and Qualls were assigned to work at the STU. (*Id.* at Ex. A, Special Custody Report of SCO Darlene McCann.) At approximately 1:10 p.m. on that date, Defendant McCann was in the STU therapy building pat frisking residents prior to their entry to group therapy sessions. (*Id.*) When Defendant McCann was finished pat frisking the residents, she entered a nearby office area with a resident to empty the trash. (*Id.*) While she was entering the office area, Plaintiff and two other residents were entering the therapy building to attend a group therapy session. (*Id.*) Defendant McCann told the three residents to wait for her to finish emptying the trash in order to pat frisk them before their entry into the group session. (*Id.*) When Defendant McCann exited the office again, the two other residents were waiting to be pat frisked, but Plaintiff had gone into his group session. (*Id.*) She informed Plaintiff that he must be pat frisked before entering the group therapy room. (*Id.*) Plaintiff then exited the group room and stood in position to be pat frisked, with his hands above his head. (*Id.*) While being pat frisked, Plaintiff's elbow made contact with the left side of Defendant McCann's chin. (*Id*; Defs.' Br., Decl. of Justin L. Conforti ("Conforti Decl."), Ex. A, Dep. of Mark Artis ("Artis Dep.") 25:5-7.) Plaintiff "immediately apologized and said 'I didn't do it on purpose. It was an accident.'" (*Id.* at 27:14-15; 51:23-24.) Defendant McCann then called a "Code 33," to which Defendants Kelly, Hammel, Moreno and Qualls responded. (Maloney Decl., Ex. A.)

2

Defendants state that Plaintiff was handcuffed without incident and taken to the infirmary, where he was examined by Nurse Elizabeth Ward. (*Id.*, Maloney Decl., Ex. A, Special Custody Report of Nurse Elizabeth Ward.) Defendants do not acknowledge any physical altercation with Plaintiff. In his deposition, Plaintiff testified that after Defendant McCann called the code, he put himself in a "dismissed" position. (Artis Dep. 38:10-11.) Specifically, he was "facing the wall. [His] hands were on the wall. [His] forehead was touching the wall. [His] hands were interlocked behind his head. [He] was on his knees." (*Id.* at 38:13-16.) He further testified that

> [Officer Moreno] jumps with his foot fully extended out, kicks me in my side underneath my left armpit…Then Officer Hammel proceeded to grab me and slam me into the ground. I'm not sure if it was necessarily from the force of the kick or Officer Hammel facing me or throwing me down on the ground, but I ended up laying flat on the ground. My shirt was practically ripped off of me. It was torn completely, from the shoulder sleeve down to the end of the shirt.
> …
> [Officer Hammel, Officer Kelly and Officer Moreno] just started pounding and kicking and stomping me and I just was crying. I was just saying that I didn't do it on purpose. I didn't hit her. I didn't hit her. They just kept stomping me and they kept kicking me and they kept punching me.

(*Id.* at 39:4-6; 39:8-15; 40:11-18.)

Defendants state that according to an examination by the nurse, Plaintiff did not have any visible trauma or injuries and that Plaintiff "denied any pain or discomfort." (Maloney Decl., Ex. A, Special Custody Report of Nurse Elizabeth Ward.) Nurse Edith Feldman reported that Plaintiff had no visible trauma and that he was crying. (*Id.*, Ex. B, Electronic Medical Record of Mark Artis, July 7, 2010.) In his deposition, Plaintiff testified that, as a result of the altercation, he had a "busted up lip," "scrapes along [his] ribcage" and "abrasions under [his] armpit." (Artis Dep. 53:5-25.) He also stated that he had a "slightly bruised eye" that appeared the following morning. (*Id.*)

On the day of the incident, the Special Investigations Division of the Department of

3

Corrections conducted an investigation. (Maloney Decl., Ex. C, SID Administrative Investigation Report.) Investigator Rudy Valentin interviewed Plaintiff, who admitted to making contact with Defendant McCann during the pat frisk search. (*Id*.) The report further stated that Plaintiff denied sustaining any injuries during the incident and refused to submit a written report detailing his involvement. (*Id.*)

Plaintiff testified that since the incident, he has not experienced any physical pain, but that he suffers from anxiety, "emotional and mental issues" and "vivid dreams." (*Id*. at 64:12-67:5.)

**II. LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.2d 641, 647 (3d Cir. 2007).

Federal courts "have traditionally given *pro se* litigants greater leeway where they have not followed the technical rules of pleading and procedure." *Folsom v. Superior Court of New Jersey, Middlesex Vicinage*, 2008 WL 1782236, at *4 (D.N.J. Apr.17, 2008) (quoting *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993)). As such, "[w]here a nonmoving pro se litigant fails to file a responsive Local Civil Rule 56.1 statement of undisputed material facts, a court may draw the

4

relevant facts underlying the claims from available sources such as the complaint, deposition testimony, the moving litigant's Local Civil Rule 56.1 statement of undisputed material facts and supporting exhibits." *Athill v. Speziale*, 2009 WL 1874194, at *2 (D.N.J. June 30, 2009); *see also Folsom*, 2008 WL 1782236, at *4 (holding that although plaintiff failed to submit a response to defendant's Rule 56.1 statement of material facts, he asserted his own version of the facts in his submissions to the court and thus, the facts adduced by plaintiff that varied from defendant's Rule 56.1 statement were deemed denials of defendant's statement of facts); *Stewart v. Kelchner*, 358 F. App'x 291, 294 n.9 (3d Cir. 2009) ("In light of the fact that [Plaintiff] was acting *pro se*, we hesitate to adopt the District Court's approach of accepting the defendants' statement of material facts as uncontested solely because Stewart failed to submit a paragraph-by-paragraph response.")

As a pro se litigant, Plaintiff is held to a more lenient standard than a licensed attorney. In addition to his complaint, he has provided the Court with an opposition to the Defendants' motion for summary judgment, which includes a firsthand account of the incident and points to supportive evidence contained in Defendants' exhibits. Therefore, to the extent the facts contained in these materials vary from Defendants', they will be deemed denials of Defendants' statement of facts.

**III. DISCUSSION**

Defendants seek summary judgment on the following claims: (1) compensatory damages; (2) excessive force claim against Defendants McCann, Hammel, Kelly and Moreno; (3) failure to protect claim against Defendant Qualls; (4) punitive damages.

**A. Excessive Force**

Although an involuntarily committed patient of a state hospital is not a prisoner per se, his confinement is subject to the same safety and security concerns as that of a prisoner. *Andrews v. Neer*, 253 F.3d 1052, 1061 (8th Cir. 2001) (holding that an excessive-force claim from an

involuntarily committed state hospital patient should be evaluated under the same standard as an excessive-force claim brought by pretrial detainee). Because an involuntarily committed psychiatric patient is confined for treatment rather than incarcerated for the purpose of punishment following conviction, the Eighth Amendment does not apply. *See Neely v. Feinstein*, 50 F.3d 1502, 1508 (9th Cir. 1995); *see also Youngberg v. Romeo*, 457 U.S. 307, 324-325 (1982) (concluding that an involuntarily committed patient has substantive due process rights under the Fourteenth Amendment and the Eighth Amendment was not the proper standard of liability); *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199 (1989) ("The State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."). The rights of patients in psychiatric hospitals more appropriately arise under the Fourteenth Amendment.

In *Youngberg*, 457 U.S. 307, a case involving a mentally ill person involuntarily committed to a state institution, the Supreme Court reasoned that "persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Id.* at 321-22. Involuntarily committed persons enjoy "constitutionally protected interests in conditions of reasonable care and safety," giving rise to an unquestioned "state duty to provide reasonable safety for all residents and personnel within the institution." *Id.* at 324. "[A] decision, if made by a professional is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 321–22, 323. The logic of the Supreme Court's ruling in *Youngberg* dictates that involuntarily committed mental patients are at least afforded the same protection against the

6

excessive use of force as convicted prisoners. *See Aruanno v. Caldwell*, 2011 WL 2293385, *7 n.5 (D.N.J. June 08, 2011)("Because Plaintiff is civilly committed, his claim arises under the Due Process Clause of the Fourteenth Amendment…However, Eighth Amendment standards are applicable to his claim")(citations omitted); *see also Rivera v. Marcoantonio*, 153 F. App'x 857, 859 n.1 (3d Cir. 2005).

There are several factors to be utilized when determining whether an officer used excessive force in a claim alleging violation of the Eighth Amendment: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Plaintiff is at least entitled to this same standard, according to the Supreme Court's decision in *Youngberg*.

Here, crediting Plaintiff's version of the incident, Plaintiff dropped to his knees and placed his hands above his head when the code was called. When Defendants Hammel, Kelly and Moreno arrived, he was already in that submissive position and not resisting. However, said Defendants proceeded to "pound," "kick," and "stomp" Plaintiff nonetheless. In support of his claims, Plaintiff relies on his deposition testimony as well as the reports from the nurses at the infirmary.

Considering the factors set forth above, and construing all inferences in Plaintiff's favor, the Court holds that an issue of fact exists as to whether Defendants Hammel, Kelly and Moreno used excessive force during the code and handcuffing process. Though Defendants argue that Plaintiff's injuries are *de minimis* in nature and are consistent with the use of reasonable force,

based on Plaintiff's testimony that he had dropped to his knees with his hands on his head before the officers even arrived in response to the code call, it is clearly a question of fact as whether any force was necessary. *See Brooks*, 204 F.3d at 108 ("Although the extent of an injury provides a means of assessing the legitimacy and scope of the force, the focus always remains on the force used"). Thus, summary judgment is inappropriate on Plaintiff's excessive force claim against Defendants Hammel, Kelly and Moreno.

With regard to Defendant McCann, it is clear that she did not use excessive force. *See Washam v. Klopotoski*, 403 F. App'x 636, 640 (3d Cir. 2010). Plaintiff testified that she "shoved" him during the frisk before Plaintiff entered his therapy room. (Artis Dep. 14:12-13; 40:24-25.) However, that is the only allegation made against Defendant McCann regarding force. As such, summary judgment will be granted for Defendant McCann on the excessive force claim. *See Youngberg*, 457 U.S. at 321–22, 323; *Brooks*, 204 F.3d at 107.

**b. Failure to Protect**

Defendant Qualls moves for summary judgment on Plaintiff's failure to protect claim. Defendant bases his argument on the fact that "Plaintiff did not suffer any harm" and that there is no indication Defendant Qualls knew of and disregarded "an excessive risk to inmate health or safety." (Defs.' Br. 20-21.) However, it does not appear that Plaintiff has raised a failure to protect claim against Defendant Qualls. Rather, in his second cause of action in the body of the complaint, he alleges a claim for "failure to intervene" against Defendant Qualls.

"If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." *Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002) (citations omitted). However, an officer is only liable if there is a realistic and reasonable

8

opportunity to intervene. *Id.* This analysis applies equally to corrections officers. *Id.* at 651.

Since it appears that Plaintiff has not alleged a claim for failure to protect against Defendant Qualls, Defendant's request for summary judgment on this issue is denied.

**c. Damages**

Defendants seek summary judgment from the Court finding that Plaintiff is not entitled to compensatory or punitive damages.[1]

With regard to any compensatory damages claim, Defendants argue that said claim is barred by 42 U.S.C. § 1997e(e), which states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." However, Plaintiff is not a "prisoner" within the meaning of that statute. *See Marcum v. Harris*, 328 F. App'x 792, 796 (3d Cir. 2009) (an individual who is civilly committed pursuant to the New Jersey Sexually Violent Predator Act, not a "prisoner" within the meaning of the PLRA). *See also Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000) (holding that plaintiff detained pursuant to California's Sexually Violent Predators Act is not a "prisoner" as that term is used in 42 U.S.C. § 1997e because his "detention is not ... punishment for his criminal conviction but rather a civil commitment for non-punitive purposes"). As such, Defendants' motion for summary judgment on this ground is denied.

With regard to Defendants' motion for summary judgment on Plaintiff's claim for punitive damages, a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless

---

[1] Plaintiff's complaint generally seeks "monetary damages" but does not specify the type of damages sought. (Compl. ¶ 28.) It appears that the section of Defendants' brief seeking summary judgment on a punitive damages claim may have been inadvertently included, as the citation is to the docket of a different case. (Resp'ts' Br. 21 (citing PACER Civil Action No. 09-4989, Docket Entry No. 1, at ¶ 7).)

or callous indifference to the federally protected rights of others. *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Allah v. Al-Hafeez*, 226 F.3d 247, 251-52 (3d Cir. 2000). Punitive damages should not be awarded unless defendants' conduct has been "particularly egregious" with defendants having acted with actual knowledge that they were violating a federally protected right or with reckless disregard of whether they were doing so. *Conchetti v. Desmond*, 572 F.2d 102, 105-106 (3rd Cir. 1978).

In the present case, there are a large number of disputed facts which will have to be decided at the appropriate time. Plaintiff deposition testimony and other evidence would permit a jury to find that defendants acted with the requisite malice, intent, and evil thought described above as cause for awarding punitive damages. Therefore, summary judgment as to this issue will be denied.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is GRANTED with regard to the excessive force claim against Defendant McCann. Defendants' motion is DENIED on all other grounds. An appropriate order follows.


Dated:  6/10/13                                                                              s/William J. Martini

_____
WILLIAM J. MARTINI
United States District Court